OPINION OF THE COURT
Joseph M. Lane, J.
The U.S.T.A. operates a public tennis facility in Flushing Meadow Park, Queens County, New York. On September 1, 1988 during the U.S. Open Tennis matches, the New York *450 City Fire Department served three summonses upon the U.S.T.A. National Tennis Center, Inc., located at 123-30 Roosevelt Avenue, Flushing, Queens, N. Y., alleging by way of complaint/information that the defendant violated section 27-361 of the New York City Building Code (Administrative Code of City of New York, tit 27, ch 1) (unclassified misdemeanor) by allowing the passageway exits at the tennis center to become obstructed by people and placing plastic chains across the exists while tennis matches were underway with 10,000 people in the tennis center. The violation consisted of a practice and procedure by the ushers of accumulating the spectators at the top of the stairwells and into the aisles for up to 25 minutes on some occasions. The purported purpose was to minimize the possible diversion of the players’ concentration during the match. These spectators were not permitted to proceed to their seats until the odd game ended. The estimate of spectators observing these tournaments on any particular occasion is up to 20,000 people.
The defendant denies the allegations, contending (1) that the statute failed to provide adequate notice; and (2) that the statute was vague and resulted in selective enforcement, thereby constituting a violation of the rights guaranteed to the defendant under Federal and State Constitutions.
Administrative Code § 27-361 is contained in the Building Code and states: "All exits and access facilities shall be located so that they are clearly visible, or their locations clearly indicated, and they shall be kept readily accessible and unobstructed at all times.”
The section is clear and unequivocal on its face. Exits and access pathways must be kept clear for use at all times without obstruction.
Section 27-104 of the Administrative Code indicates pertinently that this code shall be liberally interpreted and any conflict with other laws shall be resolved in favor of the more restrictive requirement.
Section 27-531 (a) (7) requires, in pertinent part, that standees shall not encroach on the required exit facilities.
The principal question presented to the court is whether the statute is specific enough to provide the defendant with notice of this proscribed conduct. It is the defendant’s position that the language of the statute, requiring that the exit and access facilities be kept readily accessible and unobstructed at all times, does not apply to people awaiting seating at the tennis *451 matches. The defendant asserts that the statute must be construed literally, that is, that the statute is intended to cover physical objects and not people. Defendant contends that a reasonable reading of the statute does not provide the necessary notice of the exact conduct required to be avoided. Nor does the statute equate exit and access facilities with stairwells or passageways.
Further, the defendant asserts that tennis is a game requiring a high degree of concentration. This requires a restriction of movement of patrons during play in order not to distract the players. The defendant stated that the referee would not allow the play to go forward while patrons were entering the stadium. Defendant noted that similar procedures are in effect at Wimbledon and the French Open and at other international tournament centers. For these reasons the defendant contends it is necessary to put rules in effect precluding people from entering the stadium during play, except during the "odd” game break when the tennis players change sides.
The court finds unpersuasive the argument presented by the defendant that section 27-361 of the Administrative Code (tit 27, ch 1) is unconstitutional because of vagueness and for violation of Due Process Clauses of State and Federal Constitutions. The language of the statute prohibits the obstruction of exits and access facilities by following a procedure that calls for people to congregate and wait in the passageway so that it becomes impassable. The defendant clearly engaged in a course of conduct that blocks the passageway. (People v Byron, 17 NY2d 64.)
This court is constrained to hold that the accumulation of a large group of people in the stairwells of this arena constitutes a failure to keep exits readily accessible and unobstructed within the meaning of section 27-361 of the Administrative Code (Building Code) (People v Hollstegge, 129 Misc 2d 580; People v Victor P., 120 Misc 2d 770).
The contention by the defendant that pursuant to section 26-248 of the Administrative Code the prosecution was subject to discontinuance because of the prompt alleged correction of the condition by the defendant upon notification thereof is unavailing. Section 26-246 (a) (1) indicates that no prior notice of violation is required and the discontinuance after compliance does not apply in the case of exit obstruction.
The defendant’s assertion that the statute is unconstitutionally vague in failing to promulgate standards of conduct *452 recognizable as to proscribed behavior is rejected. (People v Byron, supra.) The section imposes a strict liability not to obstruct exits and passageways for the safety of the spectators. This imparts fair notice to a person of ordinary intelligence as to what is prohibited, i.e., obstruction of exits and passageways. Section 27-361 along with section 27-531 of the Administrative Code leave no doubt that people are considered an encroachment on exit facilities and only a determination as to quantity need be made to establish the violation.
Blocked exits are a primary cause of injuries and often death when disasters occur at public events involving the assemblage of large numbers of people. This is especially true in the instant case. Here 10,000 people were engaged in watching tennis matches. Entry and exit to the stadium proper is controlled by approximately 14 to 18 stairwells, 8 to 10 of which were blocked by patrons awaiting to be seated until the odd game ended. The evidence shows that it would not be feasible for people to evacuate the stadium in the event of an emergency with the stairwells and passageways being impassable with people. (The plastic chains do not present a major obstacle since same are only two feet above ground and controlled at one end by ushers.) The fire department personnel noted that a sudden burst of smoke from concessionaires’ stands or even a sudden mass movement of spectators could create a panic causing people to seek to leave the stadium through blocked passageways resulting in a potential disaster. History is replete with catastrophies involving loss of many lives due to hazards presented by improper policing of access and exit facilities at public events. The sudden surging movement of masses of people assembled together when excited by a sudden event presents real and imminent dangers.
Accordingly, for all the above reasons this court determines that section 27-361 of the Administrative Code is constitutional as applied, that the defendant required no prior notification of the violation, and no immediate correction thereof required a vitiation of the prosecution. The active procedure by the defendant creating a large group (20 to 40 people) to accumulate in the passageways until the odd games ended is a violation of the statute and constitutes an obstruction. This court is instilled with the inescapable conclusion, and so finds, that defendant is guilty beyond a reasonable doubt on all counts.